## Case No. 17,171.

### WARE et al. v. BRUSH.

[1 McLean, 533.] [1]

Circuit Court, D. Ohio. July Term, 1839. [2]

MILITARY LAND WARRANTS—PATENT TO ASSIGNEE—EQUITY JURISDICTION—ASSIGNMENT BY EXECUTOR — LIMITATIONS — LOCATOR'S IMPROVEMENTS.

1. As between the heirs at law and the assignee of a military land warrant, a court of chancery will go behind the patent and investigate the assignment of the warrant, or of the certificate of right, given by the council of Virginia, on which a warrant and afterwards a patent issued.

[Distinguished in Scott v. Evans, Case No. 12,529.]

[Cited in Rogers v. Brent, 5 Gil. 580.]

2. An executor, having no specific power given in the will, cannot assign a military warrant or a certificate on which a warrant was obtained. And where such an assignment is made by an executor, which appears on the face of the warrant and is copied into the patent, it is

1 [Reported by Hon. John McLean, Circuit Justice.]
2 [Affirmed in 15 Pet. (40 U. S.) 93.]

notice to the assignee of the warrant or the patentee.

[Cited in brief in Wiseman v. Hutchinson, 20 Ind. 43; Bonner v. Ware, 10 Ohio, 468. Cited in Bell v. Duncan, 11 Ohio, 196.]

3. Lapse of time does not operate against minors, especially where they reside in a different state, and had no knowledge of their rights.

4. The locator, having made the entry claiming the land entered upon it, and made improvements, may claim, from heirs at law, under the circumstances of this case, the part of the land usually given to a locator.

Goodenow & Wright, for plaintiffs.
Mr. Brush, for defendant.

McLEAN, Circuit Justice. The complainants [John H. Ware and others] represent themselves to be the only heirs and representatives of John Hockaday, deceased, who was an officer of the revolution, in the Virginia line on continental establishment. That he was entitled to four thousand acres of land, in the Virginia military tract in Ohio; and that he died in 1799, before the warrants were obtained. That before his decease he made a will, in which he disposed of his personal estate, and appointed Robert S. Ware, his son-in-law, William Parish and John Saunders, his executors; but Ware only proved the will, and entered upon the duties of executor. That the executor never executed the will, or settled the estate. He had no right to interfere as executor with the real estate of the deceased; and the military right to the land above stated in Virginia was considered real estate. The wife of Robert Ware died in 1805, leaving the complainants minors and heirs, and in 1808 Robert S. Ware died, leaving the complainants the exclusive interest as heirs in the land. That the executor, through one Joseph Ladd, a stranger and since deceased, without heirs and insolvent, surreptitiously procured a certificate to be issued by the council of the commonwealth of Virginia, certifying that the representatives of John Hockaday were entitled to the proportion of land, &c.; and with that certificate the said Joseph Ladd afterwards, to wit, on the 6th August, 1808, by fraud procured of the executor, an informal and illegal transfer or sale thereof to himself, by virtue of which he procured from the register of the land office of Virginia four warrants for the land aforesaid to be issued to him as assignee of Robert S. Ware, executor of John Hockaday, deceased; that one of these warrants was located in Madison county; six hundred acres of which are in the possession of the defendant [Henry Brush], who as assignee of John Hoffman, who was assignee of Joseph Hoffman, Rachel Hoffman, &c. who were assignees of Joseph Ladd, obtained in 1818 a patent for the land in his own name. That the complainants were minors, and a knowledge of these facts was recently acquired by them. In his answer the defendant denies notice, asserts that Ladd received the assignment on a valuable consideration being paid, insists that the assignment by the executor was valid; and he relies upon lapse of time. He also insists that under the circumstances, he is at least, entitled to the locator's share, &c. That he entered upon the land, has made large and valuable improvements upon it, &c.

The first question for the consideration of the court in this case is, whether the court can look behind the patent and to the assignment of the warrant; or rather the certificate on which the warrant was issued. On the part of the defendant it is earnestly contended, that the assignment of the certificate having been sanctioned by the register of the land office, in Virginia, by issuing the warrant; and by the federal officers in issuing the patent, it is not now open for investigation. That the rights of the parties must be determined by the patent, and not by acts anterior to it. The council of Virginia, in deciding the right of Hockaday, acted judicially; and it may be admitted that the grounds of their decision may not be afterwards examinable. But about this right there is no controversy between the present parties. They all claim under the military right of Hockaday. Can the evidence on which the register acted be examined? This would be going not only behind the patent, but behind the warrant also. And why may not this be done? Miller v. Kerr, 7 Wheat [20 U. S.] 1; [Hoofnagle v. Anderson] Id. 212. The register in issuing the warrant acted ministerially; and so did the commissioner of the general land office, in issuing the patent. They could determine no matter which settled the right between the present parties. Their duties were ministerial and not judicial. This is not a controversy between a claimant under Hockaday, and a stranger to such claim. It might well be doubted whether a person claiming adversely to Hockaday's assignees, could go into the validity of the assignments, either before or after the issuing of the warrant. As between such parties, the entry and patent might be conclusive. But this is a controversy between the heirs at law of Hockaday and his assignees. If the assignment was illegal or fraudulent, as asserted by the complainants, the right to the warrant and the land is in the heirs at law, and not in the assignee and patentee. The complainants are not only heirs, but they are minor heirs. At the time of the alleged assignment they had no knowledge of it, being all minors of tender years—some of them, indeed, were not then born. Could not this matter have been investigated shortly after the date of the warrant? The plea of the lapse of time will be hereafter considered, and the question will be now examined, as free from embarrassment on that ground. Suppose a suit had been instituted by the minor heirs, before the emanation of the patent. Could not the whole matter of the assignment, have been investigated in chancery. This seems to be so clear, that it is not easy to imagine, what substantial objection could have been interposed. Unless the action of the register was conclusive on the rights of the parties, there

could have been no solid objection to such an investigation. And it would be against all authority and reason to hold, that the acts of a ministerial officer can fix, absolutely the rights of parties. He may, by his act, give greater dignity to a right, but he cannot essentially change the principle on which such right is founded. This proposition would seem to be too plain for argument, and it will not be further discussed.

The question of the assignment as between the heirs of Hockaday and his assignees is open. The emanation of the patent can make no difference in this respect. And if we may investigate the assignment on which the register issued the warrant to Ladd, there can be little or no doubt of its illegality. The right of Hockaday to military land, whether it was evidenced by a statutory provision and proof of service, or by a certificate of the council, or by a warrant from the register, pertained to the realty, and did not constitute a part of his personal property. And the will gave the executor no power over the real estate. In Virginia the realty may become assets in the hands of the administrator or executor, where the personal property is insufficient to pay the debts of the deceased. But the land can only be made liable on showing to the probate court, the debts unpaid, after the exhaustion of the personal assets; and the court will then order a sale of the land. But there is no pretence that any such proceeding was had in the present case. The assignment or order for the warrant was made by the executor, as in the ordinary performance of his duties. It is in proof that the consideration received was a pair of boots and forty dollars. The inadequacy of consideration is so gross, as to afford strong presumption of fraud. The right was for four thousand acres of land, to be located in a rich and fertile district in Ohio, and this known to both the parties; and yet this valuable tract was sold to Ladd, by the executor, for some forty-four or forty-five dollars. The circumstances of this transfer, independent of the want of power in the executor, as between the present complainants and Ladd, would be sufficient evidence of fraud to set aside the assignment. But the assignment by the executor was wholly without authority; and therefore could convey no right to his assignee. Is the defendant chargeable with notice of this want of power in the executor? We think he is a purchaser with notice. The assignment, by the executor, appears upon the face of the warrant, which was transferred to the defendant, and copied into the patent.

This was clearly notice to the defendant, that the assignment was made by the executor; and it was the duty of the defendant to examine the will for the power to make it. Ordinarily, an executor does not possess this power: and the defendant was bound to look into his authority. The defendant is as much chargeable with notice, as if the assignment had been made by an attorney, and no inquiry had been made into the power under which he acted. The executor was in fact a mere agent, and could only act within the limit of his authority. Any assignment beyond this, could transfer no right. 4 Ohio, 446. Is this defect of authority, in the executor, cured by the lapse of time? The right of the complainants is not barred by the statute of limitations, as they are residents of Virginia, and do not appear to have ever been in this state. The statute therefore does not run against them. But they were minors, and on this ground, if they were residents of Ohio, the statute would not be a bar. It is admitted, that lapse of time may operate, in cases where the statute does not bar; but the circumstances which would prevent the effect of the statute, if the complainants were residents, are conclusive against the lapse of time. This principle is applied by a court of chancery under its own rules, where a party has slept upon his rights. But what negligence has there been in this case? Lapse of time can no more operate against minors, than the statute of limitations. And the complainants are proved to have been minors until within a few years past. They are citizens of another state, and they came very lately to a knowledge of their rights. Under such circumstances, there can be no negligence attributed to them. They have not slept upon their rights. On the contrary, so soon as they attained a knowledge of the mode by which a very valuable property, which had descended to them, had been disposed of by the executor, they sought legal redress. They have proved their heirship and their minority; and this proof, under the circumstances of the case, is a full and satisfactory answer to the argument drawn from the lapse of time.

The defendant must be considered as holding the lands in trust for the complainants. That Ladd was guilty of fraud in procuring the warrant in his own name as assignee, and in obtaining the assignment from the executor, there is little doubt; and it is very clear that the executor had no authority to make the transfer. But the defendant seems to have acted fairly and in good faith, in procuring his right to the warrant and entry; although he was negligent in not investigating the assignment to Ladd. By the location of the warrant, the survey of the land, its improvement, and the payment of the taxes, the complainants have been greatly benefitted; and as this has been through the instrumentality of the defendant, or of those under whom he claims, it is equitable that some compensation should be made to him. And as the master has reported that it was customary to give the locator one-third and sometimes one-fifth of the land for locating, and that in this case, under the usage, the defendant is entitled to one-fourth of the land located, the court adopt the report. This is in conformity to usage, and seems to be an equitable mode of compensating locators; and

the circumstances of this case, render this mode peculiarly appropriate and just. This usage may not be so general and so well established, as to give to the locator a lien on the land entered. for any portion of it in the hands of a purchaser. But where the locator enters into the possession of the land, and uses it in every respect as his own, making valuable and lasting improvements on it; and his title is found defective, as in this case, it is most equitable that he retain such a portion of the land, as is usually given to the locator. This interest, though not specifically assigned, may be held to have passed with a general assignment of all right in the warrant and entry to the defendant; or if he made the location he may claim this compensation for services rendered, and not by virtue of an assignment. And we think that the part thus allotted to the locator should be so laid off to the defendant, as to include his improvements; as it appears this can be done, having a reference to the value of the whole tract in its natural state, and without impairing the value of the residue of the tract. Three fourths of the amount paid for taxes on the land, the court will order the complainants to pay to the clerk for the use of the defendant; out of which the costs shall be paid, and the residue of the money to be paid over to the defendant. And the court will decree that the defendant shall convey three fourths of the land, as laid down in the master's report, with special warranty to the complainants.

[Affirmed in 15 Pet. (40 U. S.) 93.]