RICHARD P. BARKER, adm'r, &c. and ELIJAH T. BARKER, *vs.* JULIA A. CROSBY and others.

A testator, by the eighth section of his will, directed his executors to collect and pay over to his son Peter, for his maintenance, the net income of two houses and lots in the city of New York, No. 17 Elm street, and the house at the corner of Mulberry street, during his natural life; and to invest, on mortgage on real estate, $3125, and pay the income to Peter in the same manner.   At the death of Peter, leaving lawful issue, the testator gave the money and real estate to them ; and for want of such issue he bequeathed the said share to the surviving sons and daughters of the testator, share and share alike.   The testator then stated it to be his will that in the event of the death of Peter, without issue, his share should *come back to the lawful issue* of the testator, and be distributed as above directed, and not be subject to the claims of Peter's creditors.   The twelfth section of the will directed that such property as was directed by the will to *come back to the estate,* should be divided equally among the sons and daughters of the testator ; that all sums that Peter and Elijah might become entitled to receive under the will should be invested by the executors on bond and mortgage, and the interest be paid to them; and that at their death the amount should be paid to their issue; but, failing issue, that the same should be paid to the surviving children of the testator, share and share alike.   The 14th section, whereby the testator disposed of the residue of his estate equally among all his children, contained the same provision as to *all sums*

Barker *v.* Crosby.

*of money* to which Peter and Elijah might become entitled, in any way, under the will. By the 13th section, the testator directed his executors to sell and convey in fee all his real estate, not thereinbefore devised, as well as such *real estate as might come back to his estate*, and to sell all personal property not thereinbefore devised, and to apply the avails thereof, with his money at interest and on hand, for the payment of the legacies before named. Peter died in 1846, without issue, leaving six brothers and sisters surviving him; one sister, S., having died before him. The executors sold the real estate and converted it into cash. It did not appear whether there were any unpaid legacies under the will, at the time the real estate was sold.

*Held,* 1. That there was no authority in the executors, under the will, to sell the real estate named in the eighth section; and that there was not, therefore, a conversion of that real estate, by the testator, into personal estate.

2. That on the death of Peter, Elijah took a vested interest in one-sixth part of the real estate mentioned in the eighth section in fee; and that if the same had been sold by the executors, and Elijah had affirmed or should choose now to affirm the sale thereof, he was entitled to one-sixth part of the proceeds, in possession.

3. That Elijah was also entitled to one-sixth of the share of his brother Peter in the proceeds of the real estate set apart by the sixth section of the will for Sarah, who had since died without issue; the real estate set apart for her falling into the residue of the testator's estate, and Peter as well as Elijah and the other children of the testator deriving title to their respective shares by virtue of the 14th section of the will, and not as heirs of Sarah.

4. That the interest of Elijah in the share of Peter, in the real estate set apart by the will for the use of Sarah, vested in Elijah absolutely, on the death of Peter, freed from any restraint on the power of alienation; and that the one-seventh of the real estate set apart for Sarah, or the proceeds thereof, which passed to Elijah under the will, in his own right, still remained in the hands of the executors, legally subject to the restraint upon its alienation as provided by the will.

6. And that the same rule applied to the share of Elijah in the real estate purchased by the executors under the directions of the will for the use of J. B. jun.

7. That the sum of $3125, embraced in the share of Peter, under the will, was controlled by the 12th and 14th sections, in respect to the right of Elijah to receive the possession of his share thereof on the death of Peter without issue.

A CTION for the construction of a will, and the determination of the rights of the parties under the same.

*Thos. H. Rodman,* for the plaintiffs.

*M. S. Bidwell,* for the defendants.

LEONARD, J.   The complaint asks for the determination of the rights of the plaintiff Elijah T. Barker, under certain provisions of the will of his late father James Barker.

The testator died in 1843, leaving eight children surviving him, for each of whom he made a distinct and separate provision, as well as for his widow who still survives.

The principal question argued at the hearing, and insisted on by the plaintiffs, refers to the devise in favor of Peter G. Barker, provided for in the eighth section of the will. This section directs the executors to collect and pay over to Peter for his maintenance the net income of two houses and lots in the city of New York, No. 17 Elm street, and the house at the corner of Mulberry street, during his natural life, and to invest on mortgage on real estate $3125, and pay the income to Peter in the same manner.   At the death of Peter, leaving lawful issue, the testator gives the money and real estate to them; and for want of such issue, he bequeaths the said share to the surviving sons and daughters of the testator, share and share alike.   The testator then explains that it is his will, that in the event of the death of Peter, without issue, the share of Peter shall *come back to the lawful* ISSUE of the testator, and be distributed as above directed, and not be subject to the claims of Peter's creditors.

Peter died in 1846, without issue, leaving six brothers and sisters surviving him, one sister, Sarah, having died before him.   It is insisted by the defense that the interest of the plaintiff, Elijah T. Barker, in the share of his deceased brother, is controlled, in respect to the possession thereof, by the subsequent sections of the will to which I shall now refer.

The twelfth section directs that such property as is directed by the will to *come back to the estate,* shall be divided equally among the sons and daughters of the testator; *all*

*sums* that Peter and Elijah may become entitled to receive under the will, shall be invested by the executors on bond and mortgage, and the interest shall be paid to them, and at their death the amount shall be paid to their issue, but failing issue, the same shall be paid to the surviving children of the testator, share and share alike. The fourteenth section, whereby the testator disposes of the residue of his estate equally among all his children, contains the same provision as to *all sums of money* to which Peter and Elijah may become entitled in any way under his will. There can be no doubt that the sum of $3125, embraced in the share of Peter, under the will of his father, is controlled by the twelfth and fourteenth sections, in respect to the right of Elijah to receive the possession of his share thereof on the death of his brother Peter without issue, but how is it in regard to the real estate belonging to Peter's share situate in Elm and Mulberry streets?

The proof shows that the executors have sold the real estate and converted it into cash. What was their authority for so doing, and was it the design of the testator that this real should become personal estate, in the contingency of the death of Peter without issue? If the authority to sell, and the intent so to convert this real estate, exists, or is made manifest at all, it must be found in the thirteenth section of the will. By that section the testator directs his executors to sell and convey in fee all his real estate, not thereinbefore devised, as well as such *real estate as may come back to his estate,* and to sell all personal property not thereinbefore devised, and to apply the avails thereof, with his money at interest and on hand, for the payment of the legacies before named.

There is no direct proof whether there were any unpaid legacies under the will at the time this real estate was sold. It is fair, I think, to infer that the testator did not look to the undevised remainders in his real estate, from which he had carved life estates for some of his children, to make good his testamentary bounty. He mentions his money at interest,

and on hand, and this fact, with the impossibility of forming any accurate judgment as to whether any thing could be depended on by his executors for the payment of legacies, to be derived from such remainders, induces me to believe that the testator refers to some other real estate which his executors are to sell, when he mentions "real estate not hereinbefore devised."

If there were no legacies unpaid, then clearly no authority existed to sell any real estate of the testator, because there would exist no subject for the application of the proceeds under the will.

The ninth and tenth sections contain express provision for the real estate therein mentioned, on the contingency referred to, viz: "*coming back to his estate.*" These are the same words used in the twelfth and thirteenth sections, but those words are not found in the eighth section. There his executors are authorized to sell only real estate not before devised, and such *as may come back to his estate,* and the only direction as to the application of the proceeds, is to pay legacies.

The eighth section fully disposes of the whole title to the real estate therein mentioned. The remainder, after Peter's life estate, does not "come back to the estate of the testator," but "comes back to the *issue* of the testator," and is to be distributed as "above directed." A distinct direction is in the eighth section previously given as to the disposition of the remainder pertaining to Peter's share in the real estate on his death without issue; the direction is, that it shall go to his surviving sons and daughters or their issue, share and share alike.

The construction claimed by the defense is too inconsistent with the express language of the eighth section to prevail.

I think there was no authority in the executors, under the will, to sell the real estate named in the eighth section, and that there was not, therefore, a conversion of this real estate by the testator, into personal estate. On the death of Peter, the plaintiff Elijah took a vested interest in one sixth part

Barker *v.* Crosby.

of the real estate mentioned in the eighth section, in fee, and if the same has been sold by the executors, and Elijah has affirmed, or chooses now to affirm the sale thereof, he is entitled to one-sixth of the proceeds in possession.

Elijah is also entitled to one-sixth of the share of his brother Peter in the proceeds of the real estate set apart by the sixth section of the will for Sarah Barker, who died without issue in 1844. · A life estate was devised to her, with remainder to her issue. She died, however, without issue, and the real estate set apart for her fell into the residue of the testator's estate, and Peter, as well as Elijah and the other sons and daughters of the testator, derived title to their respective shares by virtue of the fourteenth section of the will, and not as heirs of Sarah.

Conceding that the power of sale mentioned in the thirteenth section applied to this share of the real estate on the death of Sarah, and that it has been sold, and the share of Peter therein invested in the manner directed by the fourteenth section of the will, then so much of the estate of the testator has been under restraint, as to the power of alienation for two lives. That interest in the share of Sarah cannot therefore be longer subject to such restraint. By the direction of the will, all money coming to Elijah thereunder is to be invested for his use, and the final vesting of the title of the share of Elijah in the share of Peter in the share of Sarah, would thereby be further restrained during the life of Elijah. Such continued restraint is not permitted by law, and the interest of Elijah in the share of Peter in the real estate set apart by the will for the use of Sarah vested in the said Elijah absolutely on the death of Peter, freed from any restraint on the power of alienation. The one-seventh of the real estate set apart for Sarah, or the proceeds thereof, which passed to the said Elijah under the will, in his own right, still remains in the hands of the executors, legally subject to the restraint upon its alienation as provided by the said will.

The same rule last mentioned applies to the share of Eli-

jah in the real estate purchased by the executors under the directions of the will for the use of James Barker, jun.

No question appears to have arisen at the present time in relation to the legacy to the widow of the testator, except such as are of a hypothetical nature, which it will be useless to consider.

The parties can draw the findings of fact, (which are not disputed,) and the conclusions of law to be filed by the court, pursuant to this opinion.

The question of costs is reserved for further consideration, when the finding of facts and conclusions of law are to be settled.

[NEW YORK SPECIAL TERM, April 3, 1860. *Leonard*, Justice.]