WINSLOW and another vs. CROWELL, impleaded with others.

Certain lands were by act of congress made subject to the disposal of the legislature of this state for the construction of a road, the act providing that whenever the governor should certify to the secretary of the interior that any ten continuous miles of the road were completed, thirty sections of said lands might be sold, and so from time to time until the road should be completed. The legislature accepted the trust, and chose commissioners, who located the road, and let the contract for constructing it (but not in exact accordance with the terms of the act appointing them), to one W., who was to complete the road in two years, and be entitled to thirty sections of the land whenever ten consecutive miles should be completed and approved by the commissioners, and so for every ten consecutive miles. Before completing any ten miles, W. assigned the contract to the plaintiffs, who, before completing any ten consecutive miles, assigned it to H., and took from him a secret agreement in writing (executed by H. only) that in case he should procure the consent of the com-

missioners to such assignment and also an extension of the time for completing the road, he should reconvey to each of the two plaintiffs one-third part of the contract, and pay them severally certain additional sums (amounting together to $30,500) out of the proceeds of the sales of lands; and such re-assignment was to be executed on demand therefor. A few days after the execution of this agreement, H. procured from the commissioners their consent to such assignment to him and extension of time, and he then completed thirty consecutive miles; and on the governor's certificate ninety sections of land were conveyed to the state under said act of congress. Afterwards, by an act of the legislature, the contract between W. and the commissioners, and the assignment thereof to H., and the extension of time granted, were approved; and on the next day H. died intestate. His widow, having been appointed administratrix, refused as such to re-assign to plaintiffs, each one-third of the contract, but afterwards assigned the unexecuted portion thereof to the defendants, A., B. and C., and also assigned to C., by a separate instrument, H.'s rights under the executed part of the contract, receiving for each assignment $5,000, and C. also paying $20,000 to Y., a subcontractor, for work already done. The ninety sections already earned were afterwards conveyed by the governor to C. In an action to set aside the two assignments so made by the administratrix, and the deed made by the governor, and to compel the administratrix and widow, and the heirs of H., to re-assign to plaintiffs an interest in said contract pursuant to their said agreement with H., *Held*,

1. That at the time of his death, H. was the *equitable owner* of the ninety sections already earned under the contract, and the state merely held the legal title in trust for him.

2. That H.'s interest in said ninety sections descended to his heirs, and the administratrix could not (without the consent of the proper court), make a valid assignment of the contract which would divest the heirs of such interest.

3. That as to the executed portion thereof, the contract was not a mere chose in action, but was a muniment of H.'s equitable title to said land.

4. That the contract was in its nature divisible, (the construction of ten consecutive miles of road entitling the contractor absolutely to thirty sections of land, without regard to his further performance of his agreement); and the unexecuted portion thereof might be assigned, without affecting rights acquired under the executed portion.

5. That C. therefore holds the legal title to said ninety sections in trust for all parties who have an interest therein.

6. That plaintiffs did not lose their right to a re-assignment of an inter-

Winslow and another vs. Crowell, impleaded with others.

est in said contract under their agreement with H. by reason of *laches* in not demanding it before the death of H. (which was within seven months after such agreement was made): (1) Because they were justified in waiting until the legislature had approved the action of the commissioners in extending the time for the completion of the road, it being doubtful whether such extension was valid until so approved. (2) Because, although the agreement for such re-assignment was signed only by H., and although it was to be made "upon demand," *it seems* (per LYON, J.) that plaintiffs would have been bound to accept such re-assignment, if tendered by H. at any time after the consent of the commissioners therein mentioned had been obtained.

7. The fact that such agreement for a re-assignment was signed by H. only does not preclude plaintiffs from the right to a specific performance thereof. *Cheney v. Cook*, 7 Wis., 413, as to this point, approved.

8. C. having paid a large sum of money for H.'s interest in the executed part of the contract, without knowledge of the agreement between H. and the plaintiffs, the latter would be estopped from setting up any claim against him under that agreement, if H. had purchased and taken his assignment from any person authorized to make it. But having taken from one who had no legal right to sell and assign such interest, he cannot contest the equities of the plaintiffs.

9. The fact that the agreement between plaintiffs and H., for an assignment to the former, was kept a secret from the commissioners to enable H. to obtain their consent to the assignment to him, and an extension of time, was not in law a fraud upon them, and does not invalidate such agreement. As the mere agents of the state, the commissioners had no interest except to have the work done in accordance with the contract; and it was immaterial to them what persons were beneficially interested in the contract for doing the work.

10. The assignment to C. cannot be upheld on the ground that a court of equity, upon a proper application, would have ordered the ninety sections of land to be sold; because, even if such sale was necessary, it is not shown that the price paid by C. was the best that could be procured.

11. At the time of the assignment by plaintiffs to H., a sum of money was due from them to Y., a subcontractor, for work already done on said road, which sum was a lien on the lands so conveyed to C.; and it does not appear that H. took subject to such lien, or even knew of such indebtedness. C. having paid the amount of such lien in order to procure the assignment made to him: *Held*, that said amount, with interest from the date of such payment, must be deducted

from the sum which would otherwise be first payable out of the proceeds of a sale of said lands.

12. Where lands are sold by an administrator without authority, the purchaser is entitled to be reimbursed out of such lands for the purchase money paid by him in good faith, and which has been applied to discharge liabilities of the estate. *Blodgett v. Hitt*, 29 Wis., 169.

13. Judgment in this case should therefore determine that C. holds said lands in trust for plaintiffs and the heirs of H.; that the lands be sold; that C. be first paid out of the proceeds so much of the $20,-000 by him paid to the subcontractor Y. as was due to Y. before the assignment to H., with interest; that there be next paid to plaintiffs the sum of $30,500, *less* the amount of such payment to C.; that one-third of the balance of such proceeds be paid to each of the plaintiffs; that out of the remaining one-third C. be repaid so much of the moneys paid by him to Y. and to the administratrix of H., as was applied to discharge liabilities of the estate, with interest from the time of such application; and that the balance of said one-third be adjudged to belong to the heirs of H.

14. Where, in an equity case, the controlling facts are all before the court, and there is no difficulty in the way of a full adjustment in the action of all the equities in respect to the fund in question, such adjustment should be made; and if the pleadings are defective or insufficient for the purpose, they should be amended.

APPEAL from the Circuit Court for *Milwaukee* County.

By an act of congress approved March 3, 1863, the United States granted to the state of Wisconsin certain lands to aid in the construction of a military road from Fort Howard, Green Bay, to the Michigan state line. 12 Statutes at Large, 797. The act provides that the lands thus granted to the state shall be subject to the disposal of the legislature thereof for the pur-poses specified therein, and no other; and also that such military road "shall be constructed with sufficient draws and ditches, and not less than forty feet in width, with a grade not less than sixteen feet wide, with such graduations and bridges as shall permit of its regular use as a wagon road in all seasons of the year, and in such other special manner" as the legislature may prescribe. (Sec. 4.) It further provides that whenever the governor shall certify to the secretary of the interior that any ten continuous miles of said road are completed, thirty sec-

tions of the lands granted by the act may be sold, and so from time to time until the road shall be completed; and if the same be not completed in five years, no further sales shall be made, but the unsold lands in such case shall revert to the United States. (Sec. 3.)

By an act of the legislature [General Laws of 1864, ch. 358], the state accepted the trust conferred upon it by the act of congress, in accordance with the provisions and conditions contained therein. By the same act of the legislature certain citizens therein named were appointed commissioners to locate and lay out such road; to let the contract for building the same; and generally to superintend and control the construction thereof. This act also provided as follows: "The said road shall be laid out not less than four rods wide, and the road-bed constructed not less than twenty-two feet wide between the ditches, in the best practicable manner; the road to be well grubbed and cleared from stumps and stones." (Sec. 3.)

The commissioners thus appointed proceeded to locate the road, and advertised for proposals to construct the same in accordance with the requirements contained in said act of the legislature, but were unable to find any responsible person who would undertake to construct the road as therein required for the lands granted to the state for that purpose, or for the proceeds thereof. The commissioners thereupon entered into a contract with the plaintiff *Winslow,* dated August 24, 1864, by which *Winslow* agreed to build the road substantially in accordance with the specifications therefor contained in the act of congress; to pay all damages and expenses incident to locating, surveying, superintending and constructing the same; and to accept and receive the lands so granted for that purpose in full payment therefor. This contract was made subject to approval and ratification by the legislature; and, in the belief that the legislature would, by a proper enactment, permit the road to be constructed in accordance with the specifications and requirements contained in the act of congress, *Winslow* further agreed

to complete the work in two years from the date of the contract, and the contract provided that whenever ten consecutive miles of the road should be completed and approved by the commissioners, *Winslow* should be entitled to thirty sections of such lands; and so for every consecutive ten miles until the road should be completed.

*Winslow* performed work under the contract, and in 1865 he assigned the contract to the United States Military Road Company, which company consisted of the plaintiffs in this action; and that company continued to do work on the road under the contract. The legislation contemplated by this contract was subsequently obtained. Gen. Laws of 1865, ch. 331.

As the time fixed in the contract for the completion of the road approached, it became obvious that the plaintiffs would be unable to complete the job within the time limited; and it seems that the commissioners were unwilling, or at least it is claimed that they were unwilling, and that they refused, to give the plaintiffs any extension of time.

On the 9th day of August, 1866, the said company assigned the contract between *Winslow* and the commissioners, and all rights and benefits to be had under it, to the late Jackson Hadley; and the plaintiffs (who constituted such company), in writing, under seal, assented to such assignment, and united and joined therein. At this time the road had been worked more or less by the plaintiffs for a distance of thirty miles, but no part of it had been accepted by the commissioners, and no consecutive ten miles thereof had been completed.

At the time of the assignment of the contract to Hadley, and in pursuance of an agreement between him and the plaintiffs, which it is claimed was kept from the knowledge of the commissioners, Hadley executed to the plaintiffs the following contract in writing:

"Whereas on the day of the date hereof the United States Military Road Company has assigned to Jackson Hadley of the city of Milwaukee, Wisconsin, a certain contract dated

August 20, 1864, between *James M. Winslow* of the one part and Fred S. Ellis, Joseph F. Loy, H. Naber, D. M. Whitney, and Charles Tuller, commissioners, etc., and now on file in the office of the secretary of state of the state of Wisconsin, which contract had been previously assigned by said *Winslow* to said United States Military Road Company, and which assignment to said Hadley the said *Winslow* and *Squire A. Taylor* assented to and joined in: And whereas it is the intention of said Hadley to apply to said commissioners and procure from them their consent to said assignment to him, said Hadley, and also an extension of the time within which said contract. is to be performed: Now therefore, for value re-ceived, the said Jackson Hadley does hereby covenant and agree to and with the said *James M. Winslow* and *Squire A. Taylor*, that in case he procures such consent and such extension, that he, the said Jackson Hadley, will, by proper instruments for that purpose, re-assign to the said *James M.. Winslow* and *Squire A. Taylor*, each, an equal one-third part of said con-tract, so that they, the said Hadley, *Winslow* and *Taylor* shall each be equally interested therein and equally entitled to the benefits, proceeds and profits thereof, such re-assignment to be executed on demand therefor, which instruments of re-assignment shall provide that the said *Winslow* shall be paid the sum of twenty-five thousand,.five hundred dollars, and the said *Taylor* the sum of ten thousand dollars, out of the proceeds of the. sales of lands to be received for the construction of the road under said contract, as soon as the same can be paid without impeding the building of said road, and before the division of any profits among the said three parties."

" The same agreement is to be carried out in case the said-Hadley shall take a new contract for the construction of said road, instead of such extension of said original contract.

{ 5 cent U. S. Rev. Stamp, cancelled. } In witness whereof the said Jackson Hadley has hereunto set his hand and seal this 9th day of August, A. D. 1866. J. HADLEY. [SEAL.]"

Hadley procured the consent of the commissioners to the assignment of the contract to him, and also procured from them an extension of the time for the completion of the work; but it does not appear at what time such consent was given or such extension granted.    He also prosecuted the work under the contract, and completed the thirty miles of road which had been in part constructed under the contract by the plaintiffs before the same was assigned to him; and, before his death, the commissioners certified to the governor that thirty continuous miles of road had been completed under the contract, and, the governor having certified that fact to the secretary of the interior, ninety sections of land embraced in such grant (being the same lands described in the complaint in this action) were appropriated and conveyed by the United States to the state of Wisconsin, pursuant to the provisions of the aforesaid act of congress.

By an act of the legislature approved March 2, 1867, the contract between *Winslow* and the commissioners, the assignment thereof to Hadley, and the extension of time granted to Hadley in which to complete the building and construction of the road, were assented to and approved. (Pr. & Local Laws of 1867, ch. 79.)

Mr. Hadley died March 3, 1867, intestate, leaving surviving him his widow and three minor children, all of whom are made defendants to this action.

Mrs. Hadley was appointed administratrix of the estate of her deceased husband on the 20th of May following, and immediately qualified as such.

On the 12th of June following, the plaintiffs made demand of the administratrix that she execute to them the instrument of re-assignment which Mr. Hadley stipulated in his agreement of August 9, 1866, to execute to them; but she failed to do so.

On the 18th of July following, the administratrix assigned the unexecuted portion of the contract between *Winslow* and the commissioners to the defendants *Crowell*, Fletcher and

Babcock, for which they paid her $5,000 in cash; and five days afterwards, as such administratrix, she assigned to said *Crowell* "the right which was of Jackson Hadley to have, re-ceive and collect pay for all work done" under such contract prior to his death, as fully as he could have done. For the latter assignment *Crowell* paid the administratrix five thousand dollars, and paid one Harriman, who had performed all the work under said contract as a sub-contractor, twenty thousand dollars; that being the amount claimed by Harriman to be due and owing him for such work, and for the payment of which he claimed a lien upon said lands.

When the defendants above named took these assignments from the administratrix, and paid, as we have seen, thirty thousand dollars therefor, neither of them had any knowledge whatever of the existence of the agreement of Hadley to re-assign an interest in the contract to the plaintiffs, but pur-chased the same and paid their money therefor in perfectly good faith.

On the 30th day of July, 1867, the governor executed a con-veyance in due form of the ninety sections of land before mentioned, to the defendant *Crowell*.

The foregoing facts appear from the pleadings and evidence.

The objects of this action are to set aside the two assign-ments of the contract, which were executed by the administra-trix, and the conveyance executed by the governor to the de-fendant *Crowell* of the ninety sections of land, and to compel the administratrix, widow and heirs of Mr. Hadley to re-assign to the plaintiffs an interest in said contract pursuant to the agreement of Mr. Hadley in that behalf, above stated and set forth.

The circuit court held that in respect to the unexecuted por-tion of the contract so assigned by the administratrix to *Crow-ell*, Babcock and Fletcher, the plaintiffs were not entitled to any relief; but in respect to the executed portion thereof, the court adjudged that the defendant *Crowell* held the legal title

to the ninety sections of land in trust for the benefit of the plaintiffs and the heirs-at-law of Mr. Hadley, and ordered a sale thereof. The court ordered a reference, and that an account be stated of the expenses and disbursements of constructing the road prior to the death of Hadley; and adjudged further that such expenses be paid out of the proceeds of such sale; that out of the balance of such proceeds *Winslow* should be paid twenty thousand and five hundred dollars, and Taylor ten thousand dollars, or in that proportion to each if such balance should be insufficient to pay the full amount; and, if sufficient, that the balance over (if any) should be paid, one-third thereof to each of the plaintiffs, and the remaining one-third thereof to the heirs-at-law of the deceased Jackson Hadley. The court reserved all questions which might thereafter arise as to the manner of applying the proceeds of such sale to the payment of the costs and expenses of constructing the road.

From such judgment the defendant *Crowell* appealed to this court.

*Finches, Lynde & Miller*, for appellant.

*Matt. H. Carpenter*, for respondent.

Lyon, J.    I. The first question which demands consideration is, What interest had Mr. Hadley in the ninety sections of land which had been earned under the contract at the time of his decease?

This question will be considered without any reference to the interest of the plaintiffs therein, and upon the hypothesis that Mr. Hadley was then the owner of the entire interest therein under the contract.

The answer of the appellant admits that at the time of his decease these lands had been fully earned, and that Mr. Hadley was then entitled to a conveyance thereof from the state.

It seems to us very clear in that event, that he was in the position of a purchaser of the lands under an executory contract therefor, after full payment of the purchase money which

he covenanted to pay for the same. After such payment, and before conveyance, the vendee becomes in equity the owner of the land, or, as he is sometimes denominated, the equitable owner, or the owner of the equitable title, and the vendor the holder of the legal title in trust for him. Until the purchase money is paid, the relation of equitable mortgagor and mortgagee in respect to such land exists between the parties to the contract, and the vendor has an interest in the land to the extent of the unpaid purchase money. But after such payment is made, the vendor holds the naked, legal title in trust for the vendee.

These principles are elementary, and it is quite unnecessary to cite authorities to support them.

We conclude, therefore, that at the time of Mr. Hadley's death the state held only the naked legal title to the ninety sections of land, and that it held the same in trust for the parties beneficially interested in the contract under which they were earned, who held the equitable title; and if Mr. Hadley was the only party interested therein, then, as a matter of course, it so held the lands in trust for him.

II. The next question is, Did the assignment by the administratrix of the estate of Mr. Hadley to the appellant of the executed portion of the contract, under which assignment he obtained from the state a conveyance of the ninety sections of land, entitle him to such conveyance? Or, stated in another form, could the administratrix, without authority from the proper court, make a valid assignment of the contract, which would divest the heirs-at-law of Mr. Hadley of any interest in such lands?

That Mr. Hadley's interest in these lands descended to his heirs, and that the administratrix of his estate had no power to convey such interest to the appellant, is so clear that argument is unnecessary. The assignment of the executed portion of the contract under which the lands were earned, to the appellant, was an attempted conveyance to him, by the administra-

trix, of the equitable title to such lands which her intestate owned at the time of his death, and which descended to, and was vested in, his legal heirs when the assignment was made.

The heirs, being minors, were incapable of consenting to such conveyance, and the administratrix had no power, either at the common law or by statute, to make it, without license from the proper court. The authorities in support of these propositions are very numerous and entirely uniform. Many of them were referred to by the counsel for the plaintiffs on the argument of the case, but it is deemed quite unnecessary to cite them here.*

But it is claimed that the contract assigned by the administratrix to the appellant is a mere *chose in action*, and such be-

---

*The following are the authorities referred to: 1. To the point that Hadley's rights to the ninety sections of land already earned under the contract descended to his heirs, counsel cited R. S., ch. 5, sec. 9, ch. 92, sec. 1, and ch. 96, secs. 1–3; Matthews on Ex'rs, 4; *Atherly v. Vernon*, 10 Mod., 518; *Davie v. Beardsham*, 1 Ch. Cas., 39; *Green v. Smith*, 1 Atk., 572; *Pollexfen v. Moore*, 3 id., 272; *Paul v. Williams*, Toth., 1; *Barker v. Hill*, 2 Ch. R., 218; Williams on Ex'rs, 552; *Livingston v. Newkirk*, 3 Johns. Ch., 315, 316, citing *Greenhill v. Greenhill*, Prec. in Ch., 320, and *Langford v. Pitt*, 2 P. Wms., 629; *Champion v. Brown*, 6 Johns. Ch., 398; *Griffith v. Beecher*, 10 Barb., 432; *Muldrow's Ex'rs v. Muldrow's Heirs*, 2 Dana, 387; *Holdfast v. Clapham*, 1 Term, 600; *Guidot v. Guidot*, 3 Atk., 254, and cases cited in note; *Reed v. Whitney*, 7 Gray, 533; *Lacon v. Mertins*, 3 Atk., 1; *Mayer v. Gowland*, 2 Dick., 565; *Howse v. Chapman*, 4 Ves., 542, 550; *Townley v. Bedwell*, 14 Ves., 591; *Lawes v. Bennett*, 1 Cox, 167; *Greene v. Greene*, 4 Mod., 148; *Fletcher v. Ashburner*, 1 Bro. C. C., 497; *Lechmere v. Carlisle*, 3 P. Wms., 211; *Bull v. Sykes*, 7 Wis., 449; *Durkee v. Stringham*, 8 id., 1; *Brayton v. Jones*, 5 Wis., 117; *Jarvis v. Dutcher*, 16 id., 309. 2. To the point that Hadley's heirs would take the estate *charged with the same trusts* as existed against it in Hadley's life-time, *Moses v. Murgatroyd*, 1 Johns. Ch., 119; *Kip v. Bank of N. Y.*, 10 Johns., 63: *Robinson v. Codman*, 1 Sumner, 121; *Giddings v. Eastman*, 5 Paige, 561; *Methodist Ch. v. Jacques*, 1 Johns. Ch., 450; *Murray v. Ballou*, id., 566; *Dexter v. Stewart*, 7 id., 532. 3. To the point that a pretended sale by an administrator of property, rights and interests which by law descend to the heirs, is wholly void, *Barker v. Crosby*, 32 Barb., 184; *Brush v. Ware*, 15 Pet., 93; *S. C.*, 1 McLean, 533.

REP.

ing its character, that she might lawfully sell and assign it. We do not think that the contract can be so regarded.  It is a muniment of Mr. Hadley's *equitable* title to the lands, the same as the conveyance from the state to the appellant is the muniment or evidence of his *legal* title thereto.  And as no one will assert that such conveyance is a mere chose in action, so we think it cannot be successfully maintained that such is the character of the executed part of the contract.

It is further argued by the learned counsel for the appellant, that the contract is not divisible; that the unexecuted portion of it was properly assigned by the administratrix; and that if she had legal authority to assign such portion, she might legally assign the whole contract.

Conceding that the assignment to the defendants Fletcher, Babcock and *Crowell* was legally made by the administratrix (and the circuit court so held), we do not think it follows that she had authority to assign the balance of the contract.  The argument rests upon the proposition that the contract is indivisible.  We are of the opinion that this proposition cannot be maintained.  Whenever ten miles of road were completed, the contract gave to the parties interested the right to thirty sections of land, without any reference to future proceedings under it.  The contractors might have built but ten miles or thirty miles of the road, and have failed entirely to perform their convenants further: still their right to the lands earned was absolute, and entirely unaffected by such future breach of their contract.  The covenants as to each ten miles of road are entirely independent of the covenants as to the balance thereof. The parties thereto are in the same position as though a separate and distinct contract had been made for building each ten miles of road.

The contract therefore is divisible, and, by reason of the execution of a part of it, that portion may have become, and did become, a muniment of Mr. Hadley's equitable title to the ninety sections of land, over which the administratrix has no

control and which she has no power to assign; while the balance of the contract may remain a chose in action, which she may lawfully sell and assign.

We conclude, therefore, that the assignment by the administratrix to the appellant of the executed portion of the contract under which the lands were earned, conveyed to him no interest in such lands as against the heirs of Mr. Hadley, and gave him no legal right to a conveyance thereof from the state. And it necessarily follows that the appellant holds the legal title thereto in trust for the benefit of all parties who have an interest therein by virtue of the contract under which the lands were earned or paid for.

III. The next question is, whether the plaintiffs have an interest in such lands which they can enforce in equity against the appellant, or against the heirs of Mr. Hadley. 1. It is claimed that the plaintiffs lost all right to have a re-assignment of an interest in the original contract by their failure to demand the same during the lifetime of Mr. Hadley. The argument is, that such re-assignment, when executed, would operate to make the plaintiffs partners with Mr. Hadley in prosecuting the work under the contract, and consequently liable for losses (if any), and that to remain quiet and not demand the execution of such re-assignment until Mr. Hadley had completed thirty miles of the road, and until after his decease, was *laches* on their part which shuts the doors of a court of equity against them.

By reference to the agreement of Mr. Hadley wherein he covenanted to re-assign an interest in the contract to the plaintiffs (which agreement has already been set out at length), it will appear that the plaintiffs were not entitled to such re-assignment until Mr. Hadley procured from the commissioners their consent to the assignment of the contract to him, and an extension of the time limited for the performance of the contract. A demand for the re-assignment before such consent and extension of time were obtained, would have been entirely

nugatory.   The agreement to re-assign bears date August 19, 1866, and Mr. Hadley died March 3, 1867, or less than seven months thereafter.   The case fails to show at what time such consent and extension of time were obtained.   The act of March 2, 1867, as we have seen, approves of and assents to such consent and extension, and it may be that the same were obtained simultaneously with the passage of the act.   So far as we have been able to find, nothing to the contrary appears in the record.   How then can it be successfully claimed that a failure to demand such re-assignment during the lifetime of Mr: Hadley, is *laches?*   But further, this position that the plaintiffs are in default in this respect is based on the assumption that it was entirely optional with them to take a re-assignment of an interest in the contract or to abstain from so doing.   I do not so understand the agreement.   I think the agreement of Mr. Hadley to re-assign on the happening of a certain contingency, which agreement was accepted by the plaintiffs, although not in form executed by them, imposed upon the plaintiffs an obligation to accept such re-assignment when the same should be tendered to them by Mr. Hadley, at any time after he obtained such consent and extension of time of the commissioners.   It is true the agreement provides that he shall execute such re-assignment "upon demand therefor ; " but this I understand relates only to the *time* when he shall execute it, and does not relieve the plaintiffs from the obligation to accept it if tendered before demand made.   Suppose the agreement had provided that the re-assignment should be executed by a certain day, for example October 1, 1866: Mr. Hadley would not have been in default for a failure to execute it before that time ; so he was not in default for a failure to do so before demand, under the agreement as it is; but that fact would not, it is believed, in either case have released the plaintiffs from the obligation to accept such re-assignment when tendered, after such consent and extension of time were obtained, and thus become jointly interested with Mr. Hadley in such original contract.   . If these

views of the proper construction of that agreement are correct, it not only disposes of the objection that the plaintiffs have been guilty of *laches*, but also of the objection that such agreement wants mutuality and cannot be enforced in equity for that reason.    As to the alleged want of mutuality, see *Cheney v. Cook*, 7 Wis., 413 (pp. 423 and 424), and cases cited.

2. It is further argued that inasmuch as the plaintiffs joined in and assented to the assignment of the contract by the Military Road Company to Hadley, and in fact constituted such company, they are now estopped from setting up or asserting any interest in such contract against the appellant, who purchased the same in good faith on the strength of such assignment, and paid a large sum of money therefor, without any knowledge that the plaintiffs claimed an interest therein.

Had the appellant purchased an interest in such contract, and taken an assignment thereof, from a person authorized to sell and assign the same, the argument would be unanswerable. The case would then come within the principle held by the supreme court of the United States in the cases of *Judson v. Corcoran*, 17 How., 612, and *Spain v. Hamilton's Adm'rs*, 1 Wallace, 604, cited and commented upon by the counsel for the appellant.    But, taking his assignment from a person who had no authority to give it, and failing thereby to acquire any equitable interest in the lands in controversy, we are unable to perceive how the appellant can invoke the aid of the principle asserted in those cases.    It is quite immaterial to him whether the heirs of Mr. Hadley own the entire interest in the ninety sections of land or whether the same is owned by such heirs in common with the plaintiffs.    In either event his condition remains unchanged.

It may be observed here that the circuit court acted upon the principle of the above cases in refusing the plaintiffs relief from the assignment of the unexecuted portion of the contract to the defendants *Crowell*, Fletcher and Babcock.    They, being assignees in good faith and for a valuable consideration, and

taking their assignment from a person who was held authorized to make it, were protected against the prior assignment to the plaintiffs. We do not think, therefore, that the plaintiffs are estopped, for the cause above stated, from asserting their interest in the lands by virtue of their agreement with Mr. Hadley.

It is quite true that where the equities are equal the legal title must prevail. But this is not a case for the application of that rule. The equities are not equal. The appellant is legally chargeable with notice when he paid his money and took the assignment of the contract, that he was dealing with an unauthorized person, and that he could not thus acquire any interest in the lands against the equitable owners thereof, whoever such owners might be. Against such equitable owners he has no equities which are operative to sustain the legal title which he has obtained.

3. The defendants offered much evidence upon the trial, for the purpose of showing that the contract between Mr. Hadley and the plaintiffs for a re-assignment to them of an interest in the original contract was a fraud upon the commissioners; that the commissioners would not have consented to the assignment of such original contract to Hadley, or given him an extension of time to complete the work, had they known that the plaintiffs were to have any interest in it; and that the plaintiffs and Hadley knew that fact, and studiously concealed their agreement for a re-assignment from the commissioners. This class of testimony was all excluded by the circuit court.

The transaction which the defendants proposed to prove, contains none of the essential elements of fraud which vitiates contracts. The commissioners were acting as the agents of the state, and the only interest which the state had in the matter was that the road should be built, and the lands, or the proceeds thereof, properly and economically applied to the construction of the same. To the state it was a matter of entire indifference who was interested in the contract; and if the commissioners, or some of them, had conceived a dislike to the

plaintiffs, and for that reason, and fearing that a knowledge of the plaintiffs' interest might interfere with obtaining their consent to the assignment of the contract to Mr. Hadley and an extension of the time for constructing the road, if the parties concealed the fact of the plaintiffs' interest from the commissioners, and left upon their minds the impression that Mr. Hadley alone was interested in the contract, this was a deception, it is true, but it comes far short of rising to the dignity of a fraud which vitiates the contract with Hadley, and which deprives the plaintiffs of all rights under it. To accomplish these results it must appear that the deception injured somebody, and the alleged deception practiced here could not have worked such injury.

We think that the circuit court was correct in excluding the testimony offered for the purposes indicated.

After a careful consideration of the whole case, we are impelled to the conclusions that the plaintiffs and the heirs of Mr. Hadley are in equity the owners of the ninety sections of land described in the complaint; that their respective interests therein are correctly ascertained and fixed by the findings and judgment of the circuit court; that the appellant holds the legal title to such lands in trust for such owners; that a sale of the lands is proper and necessary; and that the appellant should first be paid out of the proceeds of such sale such sum as the plaintiffs and Hadley, or either of them, owed Harriman for work done by him on such thirty miles of road, but not to exceed twenty thousand dollars; and that the balance of such proceeds should be disposed of as provided in such judgment.

The judgment of the circuit court, being in accordance with these conclusions, must be affirmed.

*By the Court.*— Judgment affirmed.

The appellant moved for a rehearing, and the following opinion was filed on granting that motion, at the June term, 1872.

LYON, J. The argument on the motion for a rehearing calls our attention to the fact that Mr. Hadley procured an extension of time for the completion of the road, from the commissioners, within a few days after the execution by him of the agreement to re-assign to the plaintiffs a two-thirds interest in the original contract. This fact was overlooked by us in our consultations upon the case. But we do not think that it affects our former decision. We are of the opinion, that, under the circumstances of this case, the plaintiffs were not guilty of such *laches* as closes the doors of a court of equity against them, by failing sooner to demand such re-assignment. We think that the plaintiffs were justified in waiting until the legislature had approved the action of the commissioners extending the time for the completion of the road, before making such demand. It will be remembered that the original contract between the plaintiff and the commissioners was not in accordance with the law, and subsequent legislation became necessary to render such contract valid. It may be that the agreement of *Winslow* to construct the road within two years was the consideration or inducement that prompted the legislature to enact the law of 1865, which legalized the contract; and if so, there is much force in the argument that the commissioners had no power to extend the time for the completion of the road without the consent of the legislature. We do not hold that the commissioners, in such case, had no power to extend the time, but only that their power to do so was so doubtful that the plaintiffs were justified in waiting for the assent of the legislature thereto before demanding the re-assignment from Mr. Hadley.

We do not find from the evidence that Mr. Hadley was expending such large sums of money, or incurring such heavy liabilities, as to make it necessary for his protection that the plaintiff should be especially prompt in demanding the re-assignment. Had such been the case, he doubtless would have informed the plaintiffs that he had procured the requisite con-

sent of the commissioners and extension of time, and notified them of his readiness to re-assign to them a two-thirds interest in the contract in accordance with his agreement. It is a fact not without significance, that the evidence fails to show that the plaintiffs had any knowledge of the action of the commissioners in the premises until the act of 1867 was passed, ratifying and approving their action.

Mr. Hadley died the next day after the act of 1867 was approved, and Mrs. Hadley was appointed sole administratrix of his estate May 20th, 1867. The plaintiffs commenced vigorous proceedings within a reasonable time after the decease of Mr. Hadley, to enforce their rights under their contract with him. It seems to us that the plaintiffs have not so slept upon their rights that a court of equity should refuse to grant them the relief to which they are otherwise entitled. These considerations are entirely independent of the views expressed by me in the former opinion relative to the binding force upon the plaintiffs of the contract executed by Mr. Hadley.

It is further objected that the fact that such contract was not also executed by the plaintiffs, precludes them from the right to have a specific performance thereof decreed. But the case of *Cheney v. Cook*, 7 Wis., 413, is an answer to this objection. (See the cases there cited.)

Again, the rule is invoked, that whatever a court of equity would have directed to be done upon proper application, it will regard as having been so done; and it is argued that had an application to make the sale of the lands in controversy to *Crowell* been made to a court of equity, it would have ordered such sale. The difficulty with this argument is, that we have no means of knowing that it was a proper sale. We may admit that there was a necessity for selling the land; but how do we know that it could not have been sold for more than *Crowell* paid for it? This point was not litigated upon the trial, and no court would have ordered the sale without proof that the price proposed to be paid was the best that could be obtained.

It is not deemed necessary to go into an extended discussion of the points made in the argument on the motion for a rehearing. The more important of these have been considered and decided. After a careful review of the whole case, we are constrained to adhere to our former decision, except upon certain points relating to the priorities of the parties in the proceeds of the sale of the lands in controversy, and concerning which we have doubts whether the judgment of the circuit court is correct.

We therefore order a rehearing upon the question as to whether the judgment of the circuit court ought to be so modified that it will provide:

1. That an account be also taken of the amount which the defendant *Crowell* paid to Harriman to discharge the indebtedness to him for constructing the road, which accrued prior to the time when the original contract was assigned to Mr. Hadley, and that such amount, when ascertained, be deducted from the $30,500 which the contract to re-assign provides shall be paid to the plaintiffs out of the proceeds of the sales of the lands, and only the balance thereof be paid to them therefrom;

2. As to the balance of the $25,000 paid by the defendant *Crowell* for the assignment to him of the executed portion of the original contract (which balance is to be ascertained by deducting from the $25,000 the whole amount of the expenses of constructing the road, paid by him to Harriman), that a further account be taken of the amount or portion of such balance which has been applied to discharge the liabilities of the estate of Mr. Hadley, and that the sums so applied be paid to the defendant *Crowell* out of the shares of Mr. Hadley's heirs in the proceeds of such sales, before any part thereof is paid to the said heirs.

On the last proposition the attention of counsel is called to the decision of this court at the present term, in the case of *Blodgett v. Hitt.*

*By the Court.* — A rehearing is ordered on the questions above stated.

After a rehearing, the following decision was rendered at the January term, 1873.

LYON, J. A rehearing of this cause was ordered on two propositions relating to the distribution of the proceeds of the sale of the lands in controversy. These will be found stated in the opinion on the motion for a rehearing. The appellant does not here claim the relief indicated in the second proposition, against the heirs of Mr. Hadley; and the same is therefore dismissed from further consideration.

As to the first of these propositions, we are satisfied that the amount which was owing by the plaintiffs, or the United States Military Road Company, to Harriman, at the time the contract was assigned to Mr. Hadley, which was a lien upon the lands in controversy, and which was paid by the appellant, with interest thereon from the time of such payment, should be repaid to the appellant out of the $30,500, which the contract of August 9, 1866, provides shall be paid to plaintiffs out of the proceeds of the sales of such lands. There must necessarily be an accounting to ascertain the amount of such lien and payment.

The sum thus paid by the appellant to extinguish Harriman's lien, was, at the time of such assignment to Mr. Hadley, a debt against the plaintiffs, or, what is the same thing, against the U. S. Military Road Company, which consisted of the plaintiffs. The appellant was compelled to pay it in order to get a conveyance of the lands. We find no proof that Hadley ever agreed to pay this debt of his assignors, or any part of it, or that it should be paid out of the general fund arising from the sales of the land. Whether Hadley knew of its existence or not can make no difference, unless he did so agree. He might have known of the debt and lien, but he might also have trusted to his assignors to pay and discharge the same. If Hadley had paid this debt of his assignors, it is not perceived why his position would not have been the same as that of the purchaser of personal property upon which there is an

existing lien which he is compelled to pay to save the property. In such case the purchaser could doubtless recover the amount so paid of his vendor, on the implied covenant of title, unless he purchased subject to such lien. It is clear that the appellant is in the same position in this respect, that Hadley would have occupied had he paid off the Harriman lien. We think the position is entirely untenable that, because the contract between the plaintiffs and Hadley does not provide that the former should pay and discharge the lien, therefore it must be inferred that the latter should pay one-third of it, which would be the effect of making it payable out of the general fund arising from sales of the lands. To sustain this position would be to make a contract for the parties which they did not make themselves. The view which we have taken leaves the contract as the parties made it, and applies a familiar rule of law, and one which in this particular case is believed to be eminently just and equitable.

It is not deemed necessary to discuss the subject further. The judgment of the circuit court must be modified as indicated in this opinion ; and must therefore be reversed, and remanded with direction that the same be so modified.

*By the Court.* — So ordered.

On a second motion for a rehearing, made by the appellant, the judgment was farther modified at the June term, 1873, and the motion denied.

LYON, J. The last opinion in this cause failed to discuss, and the judgment fails to dispose of, the question of the right of the appellant to be re-imbursed out of the proceeds of the land, which would otherwise belong to the heirs of Mr. Hadley, the sum paid by him to Mrs. Hadley. The reason for such omission is stated in that opinion. We were misled by the following remark in the brief of counsel for the appellant: " There are no proper pleadings in this case to adjust equities

between *Crowell* and the heirs of Hadley." The argument on this motion for a rehearing informs us that the meaning of the counsel was not correctly understood. The plaintiffs having no interest in this question, their counsel has not argued this motion.

There seems to be no difficulty in the way of a full adjustment in this action of the equities of all the parties in respect to the land in controversy. The controlling facts are all before the court; and if the pleadings are technically defective or insufficient for that purpose, they should be amended.

In *Blodgett v. Hitt*, 29 Wis., 169, it was held that where lands are sold by an administrator, without authority, the purchaser of the same is entitled to be reimbursed out of such lands for the purchase money paid by him in good faith, and which has been applied to the discharge of incumbrances upon it. Obviously the same principle applies to a case where the purchase money is applied to the discharge of the liabilities of the estate, although the same may not exist in the form of a mortgage upon the land attempted to be sold. All such liabilities are contingent incumbrances upon the real estate, and, to the extent that the money of the appellant has paid the liabilities of the estate of Mr. Hadley, he ought to be reimbursed out of the proceeds of the lands, for which he paid his money in good faith, but to which he failed to get a title.

There seems to be no necessity for a rehearing of the cause, and the motion therefor is denied, without costs except clerk's fees. But the judgment of this court must be modified, so that, in addition to the direction therein contained, it shall also direct the circuit court to so modify its judgment that the same shall provide for payment to the appellant, out of the first proceeds of the sales of such lands which would otherwise belong to the heirs of Mr. Hadley, such sum as was paid by the appellant to the administratrix and by her applied to discharge the liabilities of the estate, with interest thereon from the time the same was so applied. There must necessarily be a further

accounting to ascertain the amount so paid and applied, and the heirs, or their guardian, must have due notice of such accounting, to the end that their rights may be fully protected.

*By the Court.* — So ordered.